IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| CORY HOEDEBECKE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. |
| | ) |
| RHET SPENGEL, | ) |
| Individually and in his official capacity as a | ) |
| police officer for the City of Springfield | ) |
| Illinois, Police Department; | ) |
| | ) |
| and | ) |
| | ) |
| THE CITY OF SPRINGFIELD, ILLINOIS, an | ) |
| Illinois municipal corporation, | ) |
| | ) |
| Defendants. | ) |

**COMPLAINT AND JURY DEMAND**

NOW COMES Plaintiff, CORY HOEDEBECKE, by and through his attorneys, Gates Wise Schlosser & Goebel, and for his Complaint against the Defendants, RHET SPENGEL, Individually and in his official capacity as law enforcement officer for the City of Springfield, and THE CITY OF SPRINGFIELD, ILLINOIS, an Illinois municipal corporation, states as follows:

**GENERAL ALLEGATIONS**

**Jurisdiction and Venue**

1. This is an action for money damages brought pursuant to 42 U.S.C. §1983 and the common law and statutes of the State of Illinois. This court has jurisdiction for Plaintiff's federal claims based upon 28 U.S.C. §§ 1331 and 1343(a). This court has jurisdiction for Plaintiff's state

law claims based upon supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).

2. The civil rights violations and other unlawful conduct alleged herein were committed within the Central District of Illinois, to wit: in Springfield, Sangamon County, Illinois.

**The Parties**

3. The Plaintiff, CORY HOEDEBECKE (hereinafter "CORY") is a United States Citizen and a resident of Sangamon County, Illinois.

4. The Defendant, RHET SPENGEL (hereinafter "SPENGEL"), is a duly appointed and sworn law enforcement officer with the Springfield Police Department, employed by the Defendant, CITY OF SPRINGFIELD (hereinafter "CITY"), and at all relevant times relevant to this Complaint, SPENGEL, was acting under the color of law and within the scope of his employment.

5. SPENGEL is sued in his individual capacity and his official capacity as a law enforcement officer for the City of Springfield.

6. The CITY is an Illinois municipal corporation with its principal place of business located in Sangamon County, Illinois, and the employer of SPENGEL.

7. The CITY is directly liable for its unconstitutional customs and policies. The CITY is vicariously liable for the common law and state law claims against SPENGEL pursuant to Respondeat Superior.

8. The CITY is statutorily liable on an indemnification theory on all claims for all awards in this case related to SPENGEL, except for any award of punitive damages against him.

**Factual Allegations**

9. On Saturday, July 6, 2019, CORY and a female friend, Erika, joined a group of others celebrating the birthday of a mutual friend, which group traveled to different taverns throughout the

evening. Some members of the group rode in a small bus to the various locations. CORY drove himself and Erika instead of riding the bus.

10. CORY had known SPENGEL socially for approximately seventeen years. Erika also knew SPENGEL for many years. Both CORY and Erika knew SPENGEL was a Springfield Police Officer.

11. SPENGEL also knew CORY's wife and what type of cars CORY and his wife usually drove.

12. On or before 5:12 p.m., and unbeknownst to CORY, Erika and SPENGEL began communicating with each other via text messages which demonstrate that SPENGEL planned to meet up with Erika later that evening.

13. While texting Erika, SPENGEL was on patrol duty; however, he lied to Erika and led her to believe he was off-duty and at home drinking alcohol.

14. Through texts with Erika, SPENGEL discovered that CORY was with the birthday group and SPENGEL kept tabs on where the group was at any given time throughout the evening and where the group was going next.

15. Through Erika, SPENGEL learned that the group stopped at the following taverns: the Blue Grouch; Trails End; Weebles and the Butternut Hut.

16. During text messages with Erika, SPENGEL continuously denigrated CORY and wanted to know if CORY was drunk and what car he was driving. SPENGEL's texts to Erika, include:

        8:18 p.m.     How drunk is fat ass?

        8:24 p.m.     Let me know when he's about to leave. Is he in Jeep or his wife's

|   |   |
|---|---|
| | car? |
| 9:12 p.m. | R u guys in a big bus? |
| 9:22 p.m. | In fattys jeep? |
| 9:24 p.m. | Is Cory alone?  Hopefully, he'll go home. |
| 10:00 p.m. | Advise when tons of shit is about to leave |
| 10:08 p.m. | I'll come to hut when he leaves.  Let me know when he's paying his tab Or does his mom do it. |

17.     Erika continued to text with SPENGEL while she and CORY were at the Butternut Hut.  In those texts, SPENGEL encouraged and instructed Erika to get rid of CORY and meet up with him.

18.     CORY and Erika were unaware that SPENGEL was on patrol duty and in his squad car waiting outside the Butternut Hut and watching CORY's jeep that was parked right outside the Butternut Hut on Second Street.

19.     At approximately 12:45 a.m. on July 7, 2019, SPENGEL watched as CORY left the Butternut Hut and got into his jeep.

20.     SPENGEL followed CORY as he traveled south on Second Street, turned right to travel west on Jefferson Street and then turned left to travel south on Walnut Street.

21.     Immediately after turning onto Walnut Street, SPENGEL activated his overhead lights and conducted a traffic stop.

22.     Prior to being stopped, CORY had not violated any traffic, city, state or federal law. SPENGEL did not have any reason to believe that CORY had violated, or was about to violate, any traffic, city, state or federal law.  SPENGEL did not have an arrest warrant, probable cause,

reasonable suspicion, consent or any other lawful basis to stop CORY.

23.   CORY was seized and not free to leave.

24.   After stopping CORY, SPENGEL approached CORY.

25.   SPENGEL asked CORY how much he had to drink and falsely stated: "Just going off by your driving. You're crossing the lines several times without signaling. You stopped past the stop line back there at 2nd and Jefferson" to which CORY responded: "You have that on camera?"

26.   Springfield Police Officer Kyle Duvall arrived on scene and asked SPENGEL, What's happening, man," to which SPENGEL falsely reported: "He's hammered. I'm probably going to do a 55."

27.   Springfield Police Officer Taylor Sullivan arrived on scene and questioned the basis for a DUI arrest, asking SPENGEL: "Did you just smell it or? Was he just slurring?" SPENGEL falsely reported: "Slurring. Like yeah, I watched him leave. I watched him leave Bob's Butternut Hut and then he crossed the line."

28.   SPENGEL also falsely reported to Officer Sullivan: "Yeah I tried to stop him earlier and I'm, he ghosted on me. Then I managed to pick him up there at Bob's Butternut Hut. But I ran a CQH and he's got a prior DUI."

29.   While waiting in his car for SPENGEL to return, CORY discovered that SPENGEL and Erika had been texting each other throughout the night. After speaking with the assisting officers, SPENGEL re-approached CORY, and ordered him out of his car.

30.   SPENGEL asked CORY how much he had to drink. CORY questioned SPENGEL about texting Erika all night and asked to speak to Officer Sullivan, who declined, telling CORY, "this is his [SPENGEL'S] stop."

31. CORY then asked to speak to a supervisor, and the officers agreed to call one to the stop.

32. SPENGEL asked CORY if he was going to do any tests, and CORY responded that he was going to wait for a supervisor to arrive.

33. SPENGEL and Officer Sullivan instructed CORY that he did not have a choice to wait for the supervisor before deciding whether or not to do any tests.

34. CORY denied each of SPENGEL's allegations

> CORY: ". . . I signaled every time I changed lanes."
>
> SPENGEL: "Alright. You stopped past the stop line at 2nd and Jefferson."
>
> CORY: "No I didn't. No I didn't. Show me a video."
>
> SPENGEL: "You changed lanes without a signal."
>
> CORY: "That is just not, that is not true."
>
> SPENGEL: "And you straddled the lane. Okay?"
>
> CORY: "That's not true."

35. SPENGEL then placed CORY under arrest, handcuffed him, searched his person and placed him in the back of his marked SUV.

36. SPENGEL's supervisor, Sergeant Andrew Zander, arrived, and SPENGEL falsely reported his basis for stopping CORY, described events that never occurred, and reported observations that he never made, stating:

> "Alright. So this is the deal. Alright. Earlier he was leaving Weebles and
> I . . . he was all over the road but I couldn't get him stopped. He ghosted on me.
> And uh then I managed to pick him up. He was sitting right out in front of what do

you call it? Bob's Butternut Hut. Yeah so I was like 'oh' saw who it was. I ran the plate. I'm familiar with him. I'm familiar with his passenger. Alright? He's had two prior DUIs. He drives drunk all the time. His passenger is a friend of mine. She's texting me. Texting me back and forth wanting me to come out and meet her and all this. And I, I said, just said, 'Well maybe I will. Maybe I won't.' Basically just sitting there, dicking around with her. But then he takes off. He takes off out in front of Bob's Butternut Hut. And I saw he stopped and the uh rolled through the stop light or didn't stop past the stop line. So I stopped him. I had no idea she was going to be in the damn jeep with him."

37.    When Sergeant Zander asked SPENGEL why CORY wanted to speak to a supervisor, SPENGEL, again falsely represented that CORY was intoxicated, stating: "Yeah cause he knows that her and I had been texting for the last few hours and he's pissed about it. He thinks I'm just screwing with him but he's drunk off his ass . . . So. . . ."

38.    SPENGEL then approached Erika, who was still sitting in the jeep, and tried to justify the traffic stop, stating: "I know he's been driving all over the place drunk. He's got two prior DUIs. He drives drunk all the time. . . Something had to be done about it."

39.    SPENGEL left Erika and discussed how to proceed with Officer Sullivan and Sergeant Zander. SPENGEL suggested that he did not have to arrest CORY for DUI but that he could "just write him a few tickets and give him a slap on the wrist."

40.    SPENGEL also suggested he could allow CORY to park his car on the street and let him call another driver to take CORY and Erika home.

41.    Officer Sullivan and Sergeant Zander rejected this suggestion, and Sergeant Zander

told SPENGEL: "Better just go to, everything you're doing uh if you do that, worst case scenario is something happens to him. So you got probable cause, if you have enough to put him in handcuffs then you have enough to arrest him, right?" SPENGEL responded: "Yeah or yeah. . ." and Sergeant Zander said, "So just go ahead and do it . . . the text messages or whatever. So I told him if he wants to make a complaint, he can do it that way or he can come to the station and make a complaint to us so."

42. As a result of CORY's DUI arrest, his jeep was searched by police officers and then towed from the scene by Taylor Brothers to be impounded for a minimum of 48 hours at the cost of $75.00 for towing and $50.00 for storage.

43. SPENGEL directed that Taylor Brothers not release the jeep to CORY without first contacting the Springfield Police Department.

44. As a result of CORY's car being towed, the CITY assessed him an impoundment fee of $250.00.

45. SPENGEL drove CORY to the Sangamon County Jail, where he was assisted by Springfield Police Officer Zach Boyle

46. Officer Boyle asked SPENGEL why Boyle's involvement was needed, and SPENGEL falsely represented that he had no animosity toward CORY, stating: "I'm familiar with him. But uh . . . he doesn't like me. He doesn't like me, and I don't have any feelings one way or the other but . . . he's refused all sobriety tests so he's not gonna . . ."

47. Before leaving the jail, SPENGEL issued CORY citations for driving under the influence of alcohol, disregarding a traffic control device at Second Street and Jefferson Street, and improper lane usage as Jefferson and First Street.

48. CORY did not act or fail to act in any manner that would constitute probable cause to believe he had committed the offense of driving under the influence of alcohol. 49. CORY did not act or fail to act in any manner that would constitute probable cause to believe he had committed the offense of disregarding a traffic control device.

50. CORY did not act or fail to act in any manner that would constitute probable cause to believe he had committed the offense of improper lane usage.

51. As a result of his DUI arrest, SPENGEL gave CORY notice that his driving privileges would suspended for twelve months.

52. During the twenty minute waiting period, CORY's sobriety was demonstrated as he and Officer Boyle discussed the Dallas Cowboys football team, former Cowboys players, and their current schedule. CORY and Officer Boyle also discussed the ongoing women's soccer games and our country's success in women's soccer.

53. CORY was booked into the Sangamon County jail which involved being photographed and fingerprinted after which he was released and given a Notice to Appear in court on August 28, 2018.

54. On July 7, 2019, at approximately 3:35 p.m., sought to permanently deprive CORY of his jeep by initiating forfeiture proceedings against the vehicle based upon false information.

55. SPENGEL falseley reported that CORY had three prior DUI convictions which he believed made CORY's vehicle eligible for forfeiture.

56. SPENGEL completed asset forfeiture paperwork, sent notice of the intended forfeiture to CORY, and amended the tow form and record at the police department's front desk to reflect this false information.

57.  After his release from jail, CORY paid the City a fee for impounding his vehicle.

58.  Afer his release from jail, CORY paid Taylor Brothers its tow and storage fees due for towing his vehicle from the scene and holding it until its release.

59.  After his release from jail, CORY hired a criminal defense attorney and paid him a retainer fee.

60.  On August 15, 2018, prior to the date CORY was to appear in court, the Sangamon County State's Attorney moved to dismiss all charges against CORY and also moved to rescind the summary suspension of CORY's driving privileges.

61  The basis the prosecutor provided to the court for rescinding the statutory summary suspension of CORY's driving privileges as reflected on the court's docket sheet was "no basis for the traffic stop."

62.  The basis the prosecutor provided to the court for dismissing the criminal charges as reflected on the court's docket sheet was "IE" which stands for "insufficient evidence."

63.  CORY participated in an internal affairs investigation addressing his complaint that SPENGEL stopped him based upon ill will and without reasonable suspicion he had committed any traffic infraction and arrested him without probable cause to believe that he had committed the offense of driving under the influence of alcohol or any other offense.

64.  Upon information and belief the Division Lieutenant and Division Commanding Officers of the Springfield Police Department after review of the department's investigation and findings regarding CORY's complaint, sustained the following violations: Rule #11 - Neglect of Duty; Rule #14 - Arrests and Due Process; Rule #20 – Abuse of Position; Rule #21 – Unbecoming Conduct and Associations;  Rule #27 – Internal Investigations; and Rule #33 – Lying and Untruthfulness.

65. The basis for sustaining the foregoing violations, included but were not limited to:

(a) SPENGEL's conduct in texting CORY's friend, Erika, in an attempt to locate and surveil CORY and otherwise patrolling outside his assigned beat as a Neighborhood Patrol Officer for Beat 400.

(b) SPENGEL'S conduct in surveilling, stopping and arresting CORY without observing any traffic violations and falsely representing that CORY has slurred speech and was stumbling which reported observations were proven false by the audio and video recordings from body worn cameras of SPENGEL and assisting officers, and the testimony of those assisting officers, CORY, and Erika.

(c) SPENGEL's conduct in locating, surveilling, stopping, arresting CORY and attempting to forfeit his vehicle based upon a personal animus toward him rather than any legal justification of law enforcement motive.

(d) SPENGEL's conduct in targeting CORY for a DUI arrest based upon a vendetta and without any evidence that CORY committed a traffic violation or showed any observable signs of impairment from alcohol or drugs.

(e) SPENGEL's conduct in lying to investigators about: patrolling the area around Bob's Butternut Hut rather than sitting for three hours waiting for CORY to leave; a desire to be proactive and attempting to get an easy arrest; receiving information that CORY was a drug user and falsely suggesting that as a basis for stopping and arresting CORY; and

(f) SPENGEL's conduct in lying to his supervisor when SPENGEL told Zander that he ran CORY's plate and documenting that lie in his police report.

66. Upon information and belief, Kenneth Winslow, Chief of Police for the Springfield

Police Department, agreed with the recommendations to sustain the complaint but failed to institute a form of discipline against SPENGEL of sufficient severity and consequence warranted by the findings of the internal affairs investigation.

### COUNT I
### 42 U.S.C. §1983 – Unreasonable Seizure Against Spengel

67. CORY realleges paragraphs 1-66 as if fully set forth herein..

68. After fabricating a traffic violation, SPENGEL stopped CORY's car.

69. SPENGEL seized CORY and his passenger, Erika.

70. SPENGEL did not have reasonable suspicion, based upon specific articulable facts, that CORY had committed a traffic violation or was otherwise involved in criminal activity at the time.

71. SPENGEL did not have any other legal justification to seize CORY or his passenger.

72. The seizure of CORY without reasonable suspicion or any other legal justification violated his Fourth Amendment rights, as guaranteed by the Fourteenth Amendment, to be free from unreasonable seizures.

WHEREFORE, Plaintiff, CORY HOEDEBECKE, asks that this Honorable Court:

A. Enter judgment in favor of CORY and against SPENGEL for compensatory and punitive damages,

B. Award CORY his attorneys' fees and costs, and

C. Award any further relief this Honorable Court deems just and equitable.

**PLAINTIFF DEMANDS TRIAL BY JURY OF THIS COUNT I**

### COUNT II
### 42 U.S.C. §1983 – False Arrest against Spengel

67. CORY realleges paragraphs 1-66 as if fully set forth herein..

68. Subsequent to his unlawful traffic stop, SPENGEL arrested CORY, handcuffed him and transported him the to Sangamon County Jail, where he was booked, including being fingerprinted and photographed.

69. SPENGEL did not have an arrest warrant, probable cause or any other justification to arrest CORY.

70. The arrest of CORY without any legal justification or probable cause violated his Fourth Amendment rights, as guaranteed by the Fourteenth Amendment, to be free from unreasonable seizures.

WHEREFORE, Plaintiff, CORY HOEDEBECKE, asks that this Honorable Court:

A. Enter judgment in favor of CORY and against SPENGEL for compensatory and punitive damages,

B. Award CORY his attorneys' fees and costs, and

C. Award any further relief this Honorable Court deems just and equitable.

**PLAINTIFF DEMANDS TRIAL BY JURY OF THIS COUNT II**

### COUNT III
**42 U.S.C. §1983 – *Monell* Claim Against the City of Springfield**

67. CORY realleges paragraphs 1-66 as if fully set forth herein.

68. At all times material to this Complaint, there existed within the Springfield Police Department, the following practices, policies and customs:

(a) stopping, searching, detaining and arresting people without reasonable suspicion, probable cause, consent or any other legal basis.

(b) offering to let unlawfully detained or arrested people go who complained about being unlawfully detained.

(c) providing or offering to provide unofficial funds to those who complained about being unlawfully detained.

(d) failing to deter misconduct by demonstrating leniency in disciplining offending officers and failing to refer unlawful conduct to the Sangamon County State's Attorney's office.

69. The actions of SPENGEL as alleged in this Complaint were done pursuant to, and as a result of, one or more of the *de facto* practices, policies and customs of the CITY, through its policy maker, Kenneth Winslow, Chief of Police of the Springfield Police Department, and his predecessors.

70. The practices, policies and customs described above were known or should have been known to the municipal policy makers of the CITY.

71. The policy makers of the CITY, including Kenneth Winslow, its Chief of Police, acted with deliberate indifference in maintaining, overlooking and preserving the unconstitutional practices, policies and customs delineated above.

72. By their inaction and failure to correct the above-described practices, policies and customs, municipal policy makers tacitly approve and thus indirectly authorize the type of misconduct CORY complains of herein.

WHEREFORE, Plaintiff, CORY HOEDEBECKE, asks that this Honorable Court:

A. Enter judgment in favor of CORY and against CITY for compensatory and punitive damages,

B. Award CORY his attorneys' fees and costs, and

C. Award any further relief this Honorable Court deems just and equitable.

**PLAINTIFF DEMANDS TRIAL BY JURY OF THIS COUNT III**

## COUNT IV
### State Law – False Arrest Against Spengel and the City of Springfield

67. CORY realleges paragraphs 1-66 as if fully set forth herein.

68. CORY was detained and arrested by SPENGEL despite SPENGEL's knowledge that there was no lawful justification for doing so.

69. SPENGEL's misconduct was objectively unreasonable and was undertaken intentionally, with malice and reckless indifference to CORY's rights.

70. As a result of the above-described wrongful infringement of his rights, CORY was injured physically, emotionally and financially.

71. The CITY is liable for SPENGEL's actions pursuant to the doctrine of *respondeat superior*, as SPENGEL's acts occurred within the scope of his employment with the CITY.

WHEREFORE, Plaintiff, CORY HOEDEBECKE, asks that this Honorable Court:

    A. Enter judgment in favor of CORY and against SPENGEL for compensatory and punitive damages,

    B. Enter judgment in favor of CORY and against CITY for compensatory damages,

    C. Award any further relief this Honorable Court deems just and equitable.

**PLAINTIFF DEMANDS TRIAL BY JURY OF THIS COUNT IV**

## COUNT V
### State Law – IIED Against Spengel and the City of Springfield

67. CORY realleges paragraphs 1-66 as if fully set forth herein.

68. In the manner more fully described above, by fabricating false evidence against CORY, unlawfully stopping and arresting him, attempting to have his vehicle forfeited, and withholding exculpatory and impeaching evidence from others, SPENGEL engaged in extreme and

outrageous conduct.

69  SPENGEL's actions set forth above were rooted in an abuse of power or authority.

70. SPENGEL's actions set forth above were undertaken with intent or knowledge that there was a high probability that his conduct would inflict severe emotional distress and with reckless disregard of that probability.

71. SPENGEL's actions set forth above were undertaken with malice, wilfulness and reckless indifference to the rights of others.

72. As a result of the above-described wrongful infringement of his rights, CORY was injured physically, emotionally and financially.

73. The CITY is liable for SPENGEL's actions pursuant to the doctrine of *respondeat superior*, as SPENGEL's acts occurred within the scope of his employment with the CITY.

WHEREFORE, Plaintiff, CORY HOEDEBECKE, asks that this Honorable Court:

  A. Enter judgment in favor of CORY and against SPENGEL for compensatory and punitive damages,

  B. Enter judgment in favor of CORY and against CITY for compensatory damages,

  C. Award any further relief this Honorable Court deems just and equitable.

**PLAINTIFF DEMANDS TRIAL BY JURY OF THIS COUNT V**

### COUNT VI
**State Law – Statutory Indemnification Against the City of Springfield**

67. CORY realleges paragraphs 1-66 as if fully set forth herein.

68. Illinois Law provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope to their employment

activities.

69.     SPENGEL was at all relevant times an employee of the CITY, and was acting within to scope of his employment in committing the misconduct described above.

70.     The CITY is therefore obligated to pay any judgment for compensatory damages entered against SPENGEL in this cause.

WHEREFORE, Plaintiff, CORY HOEDEBECKE, asks that this Honorable Court:

A.     Enter judgment in favor of CORY and against CITY for any compensatory damages awarded CORY against SPENGEL,

B.     Award any further relief this Honorable Court deems just and equitable

**PLAINTIFF DEMANDS TRIAL BY JURY OF THIS COUNT VI**

Respectfully submitted,
CORY HOEDEBECKE, Plaintiff

By:     \s\ Frederick J. Schlosser
One of His Attorneys

Frederick J. Schlosser (6209954)
***GATES WISE SCHLOSSER & GOEBEL***
Attorneys at Law
1231 South Eighth Street
Springfield, IL 62703
(217) 522-9010