## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | |
|---|---|
| CORY HOEDEBECKE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    Case No. 20-3057 |
| | ) |
| THE CITY OF SPRINGFIELD, ILLINOIS, | ) |
| and RHET SPENGEL | ) |
| | ) |
| Defendants. | ) |

### OPINION AND ORDER

**SUE E. MYERSCOUGH, U.S. DISTRICT JUDGE:**

Before the Court is a Motion for Summary Judgment (d/e 43) filed by Defendants the City of Springfield ("the City") and Springfield Police Officer Rhet Spengel (collectively, "Defendants"). The City has shown that it is entitled to summary judgment as to Plaintiff's Monell claim, while Plaintiff has shown genuine issues of fact as to all other claims. Additionally, Plaintiff has shown that the facts, when viewed in the light most favorable to Plaintiff, amount to a constitutional violation which was clearly established in July 2019. Accordingly, Officer Spengel is not entitled to qualified immunity as to Plaintiff's Fourth Amendment § 1983 claims, and

Defendants' Motion (d/e 43) is GRANTED IN PART and DENIED IN PART.

## I.   BACKGROUND

The Court draws the following facts from the parties' statements of material facts, taking into account each party's objections thereto.  The Court discusses material factual disputes, if any, in its analysis.  Any fact submitted by any party that was not supported by a citation to evidence will not be considered by the Court.  See Civ. LR 7.1(D)(2)(b)(2).  Any response to an allegedly disputed fact unsupported by evidentiary documentation is deemed admitted.  Id.

The facts of this case surround a traffic stop in which Defendant Officer Rhet Spengel arrested Plaintiff Cory Hoedebecke. Plaintiff and a group of friends began bar-hopping in and around Springfield, Illinois on the evening of July 6, 2019.  Defs.' Mot. (d/e 43) p. 3; Pl.'s Resp. (d/e 44) p. 15.  Plaintiff and Officer Spengel had been friends for nearly 15 years beginning in 2003, though the pair had a falling out in the fall of 2018.  Id. pp. 14–15.  Officer Spengel was on duty the night of July 6, 2019 and was assigned to Beat 400

in Springfield.  Pl.'s Resp. p. 15.  Beat 400 did not include any of the bar-hop locations.  Id.

Before starting his shift in Beat 400, Officer Spengel communicated with Erika Carlove, a mutual friend of both him and Plaintiff, to learn about Plaintiff's involvement in the outing.  Id.  In fact, Officer Spengel was kept apprised of Plaintiff's whereabouts the entire evening of July 6 and into the early morning of July 7 through a series of text messages with Carlove.  See id. pp. 15–18. The entire evening, Officer Spengel and Carlove exchanged text messages from various points on the bar-hop route in which Carlove informed Officer Spengel about Plaintiff's movements, including to both Weebles bar and the Butternut Hut in Springfield. Id. pp. 16–18.

Carlove knew Plaintiff's whereabouts because Plaintiff was driving her in Plaintiff's Jeep along the route that night.  Id. p. 17. Carlove told Officer Spengel at 7:34 p.m. that she and Plaintiff had arrived at Weebles.  Id. p. 16.  When Officer Spengel learned about Plaintiff going to Weebles, he left Beat 400 and parked in a parking lot just south of Weebles.  Id. p. 16.  Officer Spengel stayed in that parking lot for approximately 45 minutes, all the while texting

Carlove, including asking Carlove "How drunk is fat ass?" in reference to Plaintiff.  Id.

Plaintiff and Carlove then left Weebles to go to the Butternut Hut, and Officer Spengel asked Carlove to let him know when "tons of shit," another reference to Plaintiff, was going to leave that bar. Id. p. 17–18.  In the meantime, Officer Spengel drove to and parked his car north of the Butternut Hut and waited there for approximately three hours.  Id.  To justify his time outside of his assigned Beat, Officer Spengel changed his activity log to reflect that he was performing a "premises check" and a "burglary detail." Id. at p. 18.

Plaintiff and Carlove left the Butternut Hut at around 12:40 a.m. in Plaintiff's car.  Id. at p. 19.  At about 12:44 a.m., Officer Spengel initiated a traffic stop of Plaintiff's car.  Id.  Officer Spengel was assisted by Patrol Officers Kyle Duvall and Taylor Sullivan.  Id. Spengel eventually arrested Plaintiff on charges of driving under the influence of alcohol in violation of 625 ILCS 5/11-501(a)(2) and also cited Plaintiff for disregarding a traffic control light and improper traffic lane usage in violation of 625 ILCS 5/11-306 and 625 ILCS 5/11-709(a) respectively.  Id. at pp. 19–21 (citing Ex. M).   Plaintiff

was released from the Sangamon County Jail and retained an attorney to represent him on the charges.  Id. at p. 19.  All the charges against Plaintiff were dismissed by a judge of the Seventh Judicial Circuit of Illinois, Sangamon County on motion of the Sangamon County State's Attorney on August 15, 2019.  Id. at p. 21 (citing Ex. M).  The order stated the reason for the dismissals were due to "insufficient evidence."  Id.  The mandatory suspension of Plaintiff's license which had been in place under 625 ILCS 5/11-501.1 was rescinded in the same order.  Id.

Before the charges were dismissed, Plaintiff's attorney in the criminal cases notified the Sangamon County State's Attorney, the Corporate Counsel for the City, and the Chief of Police of the Springfield Police Department of the actions Officer Spengel took prior to Plaintiff's arrest.  Id.  An internal investigation was initiated by Deputy Chief Ken Scarlette, which resulted in a formal complaint against Officer Spengel filed by the Springfield Police Department ("SPD").  Id. at pp. 19–20.  Following the investigation, Lieutenant Andrew Dodd issued a report that recommended six of seven official charges of violations of the SPD Rules should be sustained.  Id. at pp. 20–21.  Specifically, the charges to be sustained alleged

violations of Rule 11 – Neglect of Duty, Rule 14 – Arrests and Due

Process, Rule 20 – Abuse of Position, Rule 21 – Unbecoming

Conduct and Associations, Rule 27 – Internal Investigations, and

Rule 33 – Lying and Untruthfulness.  Id. at p. 21 (citing Ex. Y).

Lieutenant Dodd then recommended that Officer Spengel be

terminated for his behavior.  Id.

Springfield Police Department Deputy Chief Kenneth Scarlette

then issued a report in which he restated Lieutenant Dodd's

findings on each charge and recommended Officer Spengel be

terminated.  Id. at p. 22 (citing Ex. Z).  Springfield Police

Department Chief Kenny Winslow agreed with that

recommendation.  Id. (citing Ex. AA 53:19–20).  However,

Springfield Mayor James Langfelder, who had final authority on

SPD disciplinary decisions, instead suspended Officer Spengel for

45 days without pay as discipline for Spengel's actions surrounding

Plaintiff's arrest.  Id. at pp. 22–23 (citing Ex. AA 55:17–56:2 & Ex.

E).

Plaintiff then filed suit against Officer Spengel and the City on

February 25, 2020 alleging six violations of federal and Illinois state

law.  Defendants now move for summary judgment on each count under Federal Rule of Civil Procedure 56.

## II.    LEGAL STANDARD

Summary judgment under Rule 56 is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  On such a motion, the facts and all reasonable inferences derived therefrom are viewed in the light most favorable to the non-moving party.  Scott v. Harris, 550 U.S. 372, 380 (2007); Blasius v. Angel Auto., Inc., 839 F.3d 639, 644 (7th Cir. 2016) (citing Cairel v. Alderden, 821 F.3d 823, 830 (7th Cir. 2016)).

A genuine dispute as to any material fact exists if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The moving party bears the burden of establishing that there is no genuine dispute as to any material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Modrowski v. Pigatto, 712 F.3d 1166, 1168 (7th Cir. 2013) (explaining that Rule 56 "imposes an initial burden of production on the party moving for summary judgment to inform the district court why a trial is not

necessary" (internal citation omitted)).  After the moving party does
so, the non-moving party must then go beyond the pleadings and
"set forth specific facts showing that there is a genuine issue for
trial."  Anderson, 477 U.S. at 255 (quotation and footnotes omitted).
Summary judgment is warranted when the moving party carries its
initial burden and the non-moving party cannot establish an
essential element of its case on which it will bear the burden of
proof at trial.  Kidwell v. Eisenhauer, 679 F.3d 957, 964 (7th Cir.
2012).  "[S]ummary judgment is the 'put up or shut up' moment in
a lawsuit, when a party must show what evidence it has that would
convince a trier of fact to accept its version of events."  Johnson v.
Cambridge Indus., Inc., 325 F.3d 892, 901 (7th Cir. 2003).

### III.   ANALYSIS

Plaintiff alleges that Defendants' actions amount to six
violations of federal and Illinois law.  Plaintiff alleges in Counts I
and II that Officer Spengel's actions violated 42 U.S.C. § 1983 and
the Fourth Amendment by unreasonably seizing and falsely
arresting Plaintiff.  Count III alleges that Mayor Langfelder's
disciplinary decision amounted to a violation of Plaintiff's
Constitutional rights under Monell v. Department of Social Services

of the City of New York, 436 U.S. 658 (1978).  In Counts IV and V,

Plaintiff alleges state law tort claims for false arrest and intentional

infliction of emotional distress against both the City and Officer

Spengel.  Lastly, Plaintiff alleges state law indemnification in Count

VI and that the City is liable for any compensatory damages

awarded against Officer Spengel.

### A. Officer Spengel is not entitled to qualified immunity on Plaintiff's § 1983 Fourth Amendment claims as stated in Counts I and II.

Officer Spengel asserts the defense of qualified immunity as to

each of Plaintiff's claims under § 1983.  Generally, the doctrine of

qualified immunity is a shield police officers may use when faced

with a suit for damages under 42 U.S.C. § 1983 in which a plaintiff

claims constitutional violations.  Ashcroft v. al-Kidd, 563 U.S. 731,

735 (2011) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).

Whether an officer is entitled to qualified immunity "involves a two-

pronged inquiry: (1) whether the facts, read in favor of the non-

moving party, amount to a constitutional violation; and (2) whether

the constitutional right was clearly established at the time of the

alleged violation."  Rainsberger v. Benner, 913 F.3d 640, 647 (7th

Cir. 2019).  The two prongs of this question may be addressed in

either order depending on the claim.  <u>Pearson v. Callahan</u>, 555 U.S. 223, 242 (2009).

The Court need not always address both questions in the qualified immunity analysis.  <u>Pearson v. Callahan</u>, 555 U.S. 223, 236–42 (2009).  "[I]f the law was not clearly established, there is no need to tackle the (often harder) question whether the challenged conduct violated the Constitution."  <u>Rainsberger</u>, 913 F.3d at 647.  But where the law was clearly established, both qualified immunity questions must be addressed.  <u>Id.</u>

### i. Officer Spengel is not entitled to qualified immunity on Plaintiff's § 1983 unreasonable seizure claim in Count I.

The Court first considers Plaintiff's claim that Officer Spengel violated the Fourth Amendment by executing an unreasonable seizure.

### 1. Plaintiff's right to be free from a seizure not based on a reasonable and articulable suspicion was clearly established in July 2019.

"Undoubtedly the Fourth Amendment's general proscription against unreasonable seizures was clearly established at the time" Officer Spengel stopped Plaintiff.  <u>Phelan v. Vill. of Lyons</u>, 531 F.3d 484, 488 (2008).  For qualified immunity purposes, though, the

application of this right to these particular set of circumstances must have been "clear enough that a 'reasonable officer would understand that what he is doing violates that right.'" <u>Id.</u> (quoting <u>Saucier v. Katz</u>, 533 U.S. 194, 202 (2001)).  The plaintiff need not identify a case directly on point to show the law was clearly established.  <u>Ashcroft v. al-Kidd</u>, 563 U.S. 731, 741 (2011).  Instead, the plaintiff must show that it was "sufficiently clear that every reasonable official would have understood that what he [was] doing violate[d]" the alleged right when he acted.  <u>Lovett v. Herbert</u>, 907 F.3d 986, 992 (7th Cir. 2018) (quoting <u>Mullenix v. Luna</u>, 577 U.S. 7, 11 (2015)).

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const. Amend. IV.  Because "[a] traffic stop and accompanying detention constitute a seizure under the Fourth Amendment," a traffic stop will violate the Fourth Amendment if it is unreasonable.  <u>Phelan v. Vill. of Lyons</u>, 531 F.3d 484, 488 (7th Cir. 2008).  A traffic stop is unreasonable if the officer performing the stop does not have a "reasonable and articulable suspicion that criminal activity is afoot."  <u>Huff v.</u>

Reichert, 744 F.3d 999, 1004 (7th Cir. 2014).  And while "[t]he
Fourth Amendment permits pretextual traffic stops," i.e., traffic
stops based partially on the ulterior motives of the officer, stops are
only reasonable if they are otherwise independently "based on an
observed violation of traffic law."  Id. (quoting Whren v. United
States, 517 U.S. 806, 810 (1996)).  It, therefore, would have been
clear to any reasonable officer in Spengel's position that some
reasonable and articulable suspicion was required to stop Plaintiff's
car.  However, as explained below, a question remains for trial as to
whether Officer Spengel's stop of Plaintiff in the early hours of July
7, 2019 was reasonable.

> **2. Plaintiff has fulfilled his burden to establish a
> genuine issue for trial as to whether Officer
> Spengel's stop of Plaintiff's car was reasonable.**

Plaintiff has raised questions of fact for trial regarding the
reasonableness of the traffic stop.  Officer Spengel testified in his
deposition that he saw Plaintiff change lanes without signaling and
stopping past a stop line after seeing Plaintiff leave the Butternut
Hut.  Ex. C at 65:7–12; 78:23–79:5.  In his probable cause
statement submitted with the Sangamon County Sheriff's Office,
Officer Spengel wrote that he saw Plaintiff "fail to make a complete

stop at [a] stop light" and "straddle[] a lane line for several seconds."
Ex. I.  However, Erika Carlove, who was in Plaintiff's car with
Plaintiff at the time of the traffic stop, stated that she "as the
passenger in [Plaintiff's] car, did not see any reason for [Plaintiff] to
be pulled over."  Ex. Q at p. 7.  Carlove further stated that she
observed "no traffic violation that would've warranted an officer
pulling [Plaintiff] over that [she] noticed."  Id.  Moreover, Carlove
never stated in any text message that she believed Plaintiff was
intoxicated, despite Officer Spengel questioning her regarding
Plaintiff's intoxication.  See Pl.'s Resp. (d/e 44) p. 18.  While Carlove
is not a police officer, her statements dispute what Officer Spengel
says he observed prior to initiating the traffic stop.

Patrol Officer Sullivan also disputed other statements Officer
Spengel made in his probable cause statement, including Spengel's
statements that Plaintiff showed signs of intoxication.  Patrol Officer
Sullivan stated in her interview during the internal investigation
that Plaintiff seemed coherent, spoke coherently, and was not
slurring his speech or swaying.  Ex. N. at p. 3.

Plaintiff has presented ample evidence to raise a question for
the fact finder regarding Officer Spengel's veracity and the accuracy

of his probable cause statement.  When the facts are viewed in the light most favorable to Plaintiff, as they must be at this stage, the Court finds that a genuine issue of fact exists regarding the reasonableness of the traffic stop.  Accordingly, Officer Spengel is not entitled to qualified immunity as to Count I.

### ii. Officer Spengel is also not entitled to qualified immunity on Plaintiff's § 1983 false arrest claim as stated in Count II.

The Court next considers Plaintiff's claim that Officer Spengel violated the Fourth Amendment by executing an arrest without probable cause.

### 1. Plaintiff's right to be free from arrest without probable cause was clearly established in July 2019.

The "clearly established" prong of the qualified immunity inquiry is easily met for Plaintiff's § 1983 false arrest claim.  "There is no question that [Plaintiff's] constitutional right to be free from arrest without probable cause was clearly established at the time of [his arrest]."  Fleming v. Livingston Cty., Ill., 674 F.3d 874, 879 (7th Cir. 2012).  This case presents a Fourth Amendment claim of false arrest, so the question may also be understood as whether Officer Spengel had "arguable probable cause" to arrest Plaintiff for driving

under the influence because arguable probable cause to arrest "is 'an absolute defense' to a wrongful arrest claim under § 1983." Huff, 744 F.3d at 1005 (quoting Rooni v. Biser, 742 F.3d 737, 740 (2014)).  This standard has been repeatedly stated and employed by the Seventh Circuit, clearly establishing that an officer must have at least arguable probable cause to arrest an individual.  See Burrit v. Ditlefsen, 807 F.3d 239 (7th Cir. 2015) and Fleming, 674 F.3d 874.  The 'clearly established' prong of the qualified immunity inquiry is met, and the only question that remains is "whether the facts, read in favor of the of the non-moving party, amount to a constitutional violation."  Rainsberger, 913 F.3d at 647.

### 2. Plaintiff has raised a genuine issue of material fact regarding the existence of arguable probable cause when Officer Spengel arrested Plaintiff.

"A police officer has probable cause to arrest when, at the moment the decision [to arrest] is made, the facts and circumstances within [the officer's] knowledge and of which [the officer] has reasonably trustworthy information would warrant a prudent person in believing that the suspect has committed or was committing an offense."  Fleming, 674 F.3d at 878–79 (quoting Qian v. Kautz, 168 F.3d 949, 953 (7th Cir. 1999)).  But in the context of a

claim of qualified immunity, the reasonableness of the officer's actions is evaluated under the standard that has been called "arguable probable cause."  Burrit, 807 F.3d at 250.

The presence at the time of arrest of arguable probable cause entitles defendant officers to qualified immunity for § 1983 claims arising under the Fourth Amendment.  See id. at 249–250; Fleming, 674 F.3d at 880. "Although closely related, a determination of actual probable cause is separate and distinct from a determination of what is sometimes referred to as 'arguable probable cause' for qualified immunity purposes."  Burritt, 807 F.3d at 250 (citing Fleming, 674 F.3d at 880).  "Arguable probable cause is established 'when a reasonable police officer in the same circumstances and with the same knowledge and possessing the same knowledge as the officer in question could have reasonably believed that probable cause existed in light of well-established law.'"  Fleming, 674 F.3d at 880 (quoting Humphrey v. Staszak, 148 F.3d 719, 725 (2012)) (additional citation and internal quotation omitted) (emphasis in original).  Furthermore, "[t]he fact that criminal charges are eventually dropped . . . has no consideration in the determination of arguable probable cause at the time of arrest."  Fleming, 674 F.3d

at 249.  Neither does an officer's subjective motives.  <u>Nieves v.</u>
<u>Bartlett</u>, 139 S.Ct. 1715, 1725 (2019) (quoting <u>al-Kidd</u>, 563 U.S. at
736 ("[W]hen reviewing an arrest, [the Court] ask[s] 'whether the
circumstances, viewed objectively, justify [the challenged] action,'
and if so, conclude[s] 'that action was reasonable whatever the
subjective intent motivating the relevant officials.'")  The precise
question before the Court, then, is whether, at the time of Plaintiff's
arrest when presented with the facts then-known, a reasonable
officer could have mistakenly believed that probable cause existed
to arrest Plaintiff for driving under the influence.  <u>Burritt</u>, 807 F.3d
at 250.  This question is a question of fact for a jury to decide "if
there is room for a difference of opinion concerning the facts or the
reasonable inferences to be drawn from them."  <u>Maxwell v. City of</u>
<u>Indianapolis</u>, 998 F.2d 431, 434 (7th Cir. 1993).

 Plaintiff has presented evidence to create a genuine issue for
trial on whether Officer Spengel had arguable probable cause to
arrest Plaintiff.  As stated, the only evidence Officer Spengel puts
forth to support his probable cause finding is his own testimony
and his probable cause statement.  Plaintiff has presented Erika
Carlove's statements who was the passenger in Plaintiff's vehicle at

the time of the stop, and those of Patrol Officer Sullivan, who

assisted Officer Spengel that night, to dispute the facts asserted in

Officer Spengel's statements.  Carlove stated plainly that Plaintiff

was not intoxicated, and Patrol Officer Sullivan stated she did not

believe Plaintiff seemed intoxicated when she arrived on the scene.

Ex. N.  And while Officer Spengel did know of previous DUI charges

against Plaintiff from 2005 and 1994, "a suspect's criminal history

is a legitimate factor in a probable cause determination" only if such

history is supported by other corroborating information.  Hardiman

v. Ford, 41 F.3d 1510, 1994 WL 585409, *3 (7th Cir. 1994) (Table).

Indeed, "[a] prior arrest . . . shows very little, if anything, about the

likelihood that a person committed a crime a decade later."  Huff,

744 F.3d at 1007.  The corroborating information Officer Spengel

offers is clearly disputed, and the disputes create "a room for a

difference of opinion concerning" the reasonableness of Officer

Spengel's actions, especially in light of Spengel's behavior in

tracking Plaintiff throughout the night and disparaging Plaintiff

while doing so.  Maxwell, 998 F.2d at 434.

Officer Spengel's arguments to the contrary do not correctly

state the law.  First, Officer Spengel concedes that "there are

genuine disputes over some of [Officer Spengel's] statements" in his statements of probable cause.  Defs.' Mot. (d/e 43) at p. 7.  Officer Spengel then argues that Plaintiff cannot show Officer Spengel violated clearly established law for either the traffic stop or the DUI arrest because Officer Spengel has been "unable to identify a case which clearly establishes the lack of probable cause for a DUI stop and arrest where the officer knew of the driver's history of 3 DUI arrests, the driver had spent hours on a bar-hopping expedition (during which he admitted to consuming 9 beers, and the driver refused both a field sobriety test and a breathalyzer test."  Id. at p. 9.  But providing a case on point to that level of specificity is not required.  Ashcroft, 563 U.S. at 741.  Moreover, a plaintiff need not identify an analogous case "where the constitutional violation is patently obvious."  Reed v. Palmer, 906 F.3d 540, 547 (7th Cir. 2018)

Plaintiff here has raised disputes in the form of Carlove's and Officer Sullivan's statements regarding Officer Spengel's finding of probable cause and on the question of whether Officer Spengel had arguable probable cause.  It would have been plainly obvious to a reasonable officer that arresting an individual without even

arguable probable cause after following the individual for hours to perform a traffic stop on said individual would offend the Constitution.  Reed, 906 F.3d at 548 (quoting Safford Unified Sch. Dist. No. 1 v. Redding, 557 U.S. 364, 377 (2009)). ("Outrageous conduct 'obviously will be unconstitutional.'")  When viewed in the light most favorable to Plaintiff, the undisputed facts how that Officer Spengel followed Plaintiff throughout the night and left his own Beat assignment to do so.  They also establish that Officer Spengel asked Carlove repeatedly about Plaintiff's intoxication, though Carlove never stated Plaintiff was intoxicated.  And as stated above, Plaintiff has presented evidence to raise a dispute as to Officer Spengel's police reports.  Accordingly, Officer Spengel's request for qualified immunity as to Plaintiff's false arrest claim must be denied.

## B. Plaintiff has not carried his burden to offer evidence from which a reasonable jury could find in his favor as to the Monell claim stated in Count III.

Plaintiff also brings a claim under Monell v. Department of Social Services oof City of New York, 436 U.S. 658 (1978).  Under Monell, "[a] local governing body may be liable for monetary damages under § 1983 if the unconstitutional act complained of is

caused by: (1) an official policy adopted and promulgated by its officers; (2) a governmental practice or custom that, although not officially authorized, is widespread and well settled; or (3) an official with final policy-making authority." <u>Thomas v. Cook Cty. Sheriff's Dep't</u>, 604 F.3d 293, 303 (7th Cir. 2010).  "Liability under <u>Monell</u> is difficult to establish, requiring a § 1983 plaintiff to prove that a municipality, either through an express policy or an implied policy of inaction, took 'deliberate' action that was the 'moving force' behind a constitutional injury." <u>Taylor v. Hughes</u>, 26 F.4th 419, 435 (7th Cir. 2022) (quoting <u>Bd. of Cty. Comm'rs of Bryan Cty. v. Brown</u>, 520 U.S. 397, 403–07 (1997)).  The municipal action which forms the basis of a <u>Monell</u> claim "can take the form of an express policy (embodied, for example, in a policy statement, regulation, or decision officially adopted by municipal decisionmakers), an informal but established municipal custom, or even the action of a policymaker authorized to act for the municipality." <u>J.K.J. v. Polk Cty.</u>, 960 F.3d 367, 377 (7th Cir. 2020) (en banc).  But in any case, the plaintiff must show that the "municipal policy or custom caused the constitutional injury."  <u>Id.</u>

Plaintiff here argues that the City is responsible for Officer Spengel's actions because Mayor Langfelder "ratified" Spengel's actions when Mayor Langfelder, pursuant to his authority as the final authority on disciplinary decisions of SPD officers, suspended Spengel for 45 days rather than terminating Spengel's employment. Pl.'s Resp. (d/e 44) p. 40–41.  In support of that argument, Plaintiff cites M.A. v. County of San Bernardino, 2021 WL 4706716, at *13 (C.D. Cal. June 25, 2021) (slip copy).  The court there noted that a local government may expose itself to Monell liability when "an official with final policy-making authority ratifie[s] a subordinate's unconstitutional decision or action and the basis for it." Id. (quoting Gillette v. Delmore, 979 F.2d 1342, 1346-47 (9th Cir. 1992)).  However, the court also noted that "[t]he mere failure to discipline [individual officers] does not amount to ratification of their allegedly unconstitutional actions."  Id. (quoting Sheehan v. City & Cty. of S.F., 743 F.3d 1211, 1231 (9th Cir. 2014), reversed in part on other grounds, 575 U.S. 600, 135 S. Ct. 1765, 191 L.Ed.2d 856 (2015)).

Notwithstanding the fact that a case from the Central District of California is not binding on this Court, M.A. v. County of San

Bernardino plainly does not support Plaintiff's argument.  Like the

plaintiffs there, Plaintiff here only objects to the degree to which

Officer Spengel was disciplined.  Plaintiff does not argue that the

City engaged in a widespread practice of inadequate disciplinary

actions by the City as an institution, which can amount to a Monell

claim if such widespread failure to discipline rises to such a level

that it "permeates a critical mass of an institutional body."  Rossi v.

City of Chicago, 790 F.3d 729, 737 (7th Cir. 2015).  Instead,

Plaintiff only argues that, because Mayor Langfelder did not

discipline Officer Spengel to the degree to which the City's policies

would allow, see Ex. F p. 13, Mayor Langfelder ratified and

condoned, after the fact, Officer Spengel's actions.

But "a Monell claim requires more than" showing a final

policymaker did not discipline within his full authority.  Rossi, 790

F.3d at 737.  A Monell claim requires a showing of "a widespread

practice that permeates a critical mass of an institutional body" and

"for this reason, misbehavior by one or a group of officials is only

relevant where it can be tied to the policy, customs, or practices of

the institution as a whole."  Id.  Plaintiff does not allege such a

widespread practice here, or present any evidence to show as much,

and so his <u>Monell</u> claim falls short.  Indeed, the injury of which

Plaintiff complains is the unreasonable stop and arrest at the hands

of Officer Spengel.  Without facts showing that Officer Spengel was

either inadequately trained or that the City engaged in a

demonstrable pattern of widespread inadequate disciplinary

procedure, Plaintiff cannot show Mayor Langfelder's disciplinary

decision was the "moving force" behind either Officer Spengel's

deliberate actions or Plaintiff's injury.  <u>Taylor</u>, 26 F.4th at 435; <u>see</u>

J.<u>K.J.</u>, 960 F.3d at 377.  Because Plaintiff has not offered any

evidence to prove the causation element at the center of a <u>Monell</u>

claim, the City is entitled to summary judgment on Count III.

<u>Brown</u>, 520 U.S. at 404–405.

## C. Plaintiff has raised genuine issues for trial as to the Illinois state law claims stated in Counts IV and V.

In Counts IV and V, Plaintiff alleges Illinois state tort claims

against Officer Spengel and the City for false arrest and intentional

infliction of emotional distress.  Defendants argue only that each

state law claim falls because, in their view, Officer Spengel's actions

constituted legal police action and so Plaintiff cannot show at least

one essential element for either false arrest or intentional infliction of emotional distress.  The Court disagrees.

### i. A reasonable jury could conclude that Officer Spengel committed the Illinois tort of false arrest as stated in Count IV.

To establish a claim of false arrest under Illinois state law, a plaintiff must prove "that the plaintiff was restrained or arrested by the defendant, and that the defendant acted without having reasonable grounds to believe that an offense was committed by the plaintiff."  Meebrey v. Marshall Field & Co., Inc., 139 Ill.2d 455, 474 (1990).  Defendants correctly state that a plaintiff in a false arrest case will not be able to prove his claim if the traffic stop and arrest were supported by probable cause.  Defs.' Mot. (d/e 43) p. 11 (citing Stokes v. Bd. of Educ. of the City of Chicago, 599 F.3d 617, 626 (7th Cir. 2010).  But as stated above, there exist issues of fact for a jury on the question of whether Officer Spengel had either a reasonable suspicion or probable cause to stop and arrest Plaintiff.  Such issues also raise questions of fact for a jury as to whether Officer Spengel "acted without having reasonable grounds to believe that an offense was committed by" Plaintiff.  Meebrey, 139 Ill.2d at

474.  Therefore, Defendant's Motion (d/e 43) must be denied as to Count IV.

### ii.  A reasonable jury could also conclude that Officer Spengel committed the Illinois tort of intentional infliction of emotional distress as stated in Count V.

Under Illinois law, to survive summary judgment on his claim for intentional infliction of emotional distress, Plaintiff "must present evidence showing that (1) the defendant's conduct was truly extreme and outrageous, (2) the defendant either intended to inflict emotional distress or knew there was at least a high probability that he would cause severe emotional distress, and (3) the conduct in fact caused severe emotional distress." Stokes, 599 F.3d at 626. Officer Spengel's conduct throughout the night on July 6, 2019 clearly raises issue of fact from which a reasonable jury could find in favor of Plaintiff.  Officer Spengel left his Beat assignment, continued to communicate with Carlove in ways which disparaged Plaintiff, and executed a traffic stop and arrest on Plaintiff for reasons that are disputed.

Defendants argue that Officer Spengel's actions cannot be said to be "beyond all possible bounds of decency" as required under Illinois law because, again in their view, both the traffic stop and

arrest were legal.  Defs.' Mot. (d/e 43) p. 12 (citing <u>Stokes</u>, 599 F.3d at 626).  But questions exist as to the legality of Officer Spengel's actions as to the degree to which Spengel's actions went beyond the bounds of decency.  When viewed in the light most favorable to Plaintiff, the facts plainly establish that Officer Spengel followed Plaintiff all night, left his duty station, and stopped and arrested Plaintiff for disputed reasons.  A reasonable jury could find that such actions by a public official are beyond the pale.  Therefore, Defendant's Motion (d/e 43) must be denied as to Count V.

**D. If a jury finds in favor of Plaintiff and against Officer Spengel as to the state law claims in Counts IV and V, the City may be required to indemnify Officer Spengel.**

The final Count alleged by Plaintiff is that of indemnification.

Title 745 Section 10/9-102 of Illinois' Compiled Statutes states,

> A local public entity is empowered and directed to pay any tort judgment or settlement for compensatory damages (and may pay any associated attorney's fees and costs) for which it or an employee while acting within the scope of his employment is liable in the manner provided in this Article.

Defendants only argue that Plaintiff's indemnification claim under 745 ILCS § 10/9-102 is void because, as Defendants argued, each state law claim fails.  However, as just stated, each of Plaintiff's

state law claims survives summary judgment.  If Defendants are found liable as to any of those claims, the City may be required to indemnify Officer Spengel for any judgment against him.  Therefore, summary judgment must also be denied as to Plaintiff's indemnification Count.

## IV.   CONCLUSION

When the facts are viewed in the light most favorable to Plaintiff, a reasonable jury could find that Officer Spengel's actions were not reasonable and were without probable cause in stopping and arresting Plaintiff on the night of July 6, 2019.  Officer Spengel is not entitled to qualified immunity as to Plaintiff's Fourth Amendment claims.  Plaintiff has also shown genuine issues for trial as to each of Plaintiff's Illinois state law claims.  However, because Plaintiff has not fulfilled his burden to show evidence from which a reasonable juror could conclude that Mayor Langfelder disciplinary decision caused Plaintiff's alleged constitutional injury, Defendant's are entitled to summary judgment as to Plaintiff's Monell claim.  Therefore, Defendant's Motion for Summary Judgment (d/e 43) is GRANTED as to Count III and DENIED as to all other Counts.

**IT IS SO ORDERED.**
**ENTERED: September 1, 2022.**
**FOR THE COURT**

*/s/ Sue E. Myerscough*
**SUE E. MYERSCOUGH**
**UNITED STATES DISTRICT JUDGE**